UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AIM CONTROLS, LLC, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-08-cv-1662 |
| § | |
| USF REDDAWAY, INC. § | |
| § | |
| § | |
| § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant USF Reddaway, Inc.'s Motion for Partial Summary Judgment Limiting Damages as a Matter of Law. After considering the parties' filings and the applicable law, the Court concludes that Defendant's Motions for Partial Summary Judgment should be granted.

## I. BACKGROUND

AIM Controls, LLC, ("AIM") is a Texas business that ordered three electronic motor controllers, or drivers, from Control Techniques America, LLC ("CT"), located in Minnesota.[1] (Def.'s Answer ¶ 7; Compl. at 2, ¶ E1.) CT hired Defendant USF Reddaway ("Reddaway"), a motor carrier, to transport the drivers from Minnesota to Texas. (Def.'s Answer ¶ 7-8.)

CT and Reddaway executed a bill of lading for the shipment. (Doc. No. 10, Ex. 1.) The bill of lading was drafted by CT, the shipper. *Id.* Reddaway affixed a sticker to the bill of lading that stated, "Unless otherwise agreed in writing, driver's signature acknowledges receipt of freight only and the terms and conditions of USF 100 Rules Tariff and NMF 100 series apply to all shipments." (Doc. No. 10, Ex. 1.) The NMF 100 tariff table specifies that the release value

---

[1] These facts are either uncontested or, for the purposes of this motion only, presented in the light most favorable to Plaintiff.

1

of the property must be entered on the bill of lading. *Id.* It goes on to state, "If the shipper fails or declines to [specify a value] or designates a value exceeding $25.00 per pound, shipment will not be accepted, but if shipment is inadvertently accepted, it will be considered as being released to a value of $5.00 per pound and the shipment will move subject to such limitation of liability." *Id.* CT's bill of lading contained a box with the following text: "Carrier's liability is for actual loss pursuant to 49 U.S.C. 14706, effective October 7, 1997. The agreed or declared value of the property is hereby specifically stated by the Shipper to be not exceeding...." *Id.* This text was followed by another box in which CT could fill in the release rate. The box was left empty. *Id.*

On August 30, 2007, Reddaway attempted to deliver the drivers to AIM's customer, who refused delivery because the goods had been damaged. *Id.* CT did not have replacement drivers in stock; the customer then threatened to cancel its contract with AIM. (Compl. at 3, ¶ E2.) AIM was eventually able to repair two of the drivers and purchase a reconditioned driver to fulfill its contract. (Compl. at 3, ¶ E3.) AIM agreed that the replacement drivers would still be placed under warranty, and it promised its customer a partial price rebate once AIM was reimbursed by Reddaway. *Id.* When Reddaway denied liability for damages, AIM filed the instant suit. Reddaway moved for partial summary judgment.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

2

party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

### B. Carmack Amendment

The shipment of AIM's goods from Minnesota to Texas was an interstate shipment; thus, the case is governed by the Carmack Amendment. 49 U.S.C. § 13501(1)(E); *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003) (holding that the Carmack Amendment preempts state law causes of action); *Missouri Pac. R. Co. v. H. Rouw Co.*, 258 F.2d 445, 446 (5th Cir. 1958); *United Van Lines, LLC v. Marks*, 404 F.Supp.2d 954, 957-958 (S.D.Tex. 2005). Specifically, the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, provides "the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." *Hoskins*, 343 F.3d at 778.

### C. Bill of Lading

AIM was the purchaser of the drivers; however, AIM's customer was listed as the consignee on the bill of lading. AIM contends that it was not a party to the bill of lading and therefore should not be bound by its terms. Since the Carmack Amendment provides the exclusive remedy for damage to goods in interstate commerce, even non-parties are not allowed to recover under separate theories of contract or tort law. *Gulf Rice Arkansas v. Union Pacific Railroad Company*, 376 F.Supp.2d 715, 719 (S.D.Tex. 2005) (citing *Hoskins*, 343 F.3d at 772-778). As a result, our sister courts have applied a bill of lading's liability limitations to plaintiffs who were not a party to the bill of lading. *Gulf Rice Arkansas*, 376 F.Supp.2d at 722-723

3

(finding that Gulf Rice, the cargo owner, was bound by the liability limit selected by the shipper, who drafted the bill of lading); *Banos v. Eckerd Corp.*, 997 F.Supp 756, 763 (E.D.La. 1998) (holding that drug store customer who owned photos being shipped could not recover more than the liability limit set forth in the bill of lading that was executed by the drug store who acted as shipper). AIM cannot recover more than that allowed by the terms of CT's bill of lading.

### D. Reddaway's Limited Liability

The Carmack Amendment allows a carrier to "limit its liability to...a value established by written agreement between the carrier and the shipper." 49 U.S.C. 14706(c)(1)(A). Reddaway contends that, because CT did not specify a release rate, the inadvertence clause in the NMF 100 table effectively limits its liability to $5.00 per pound. For a carrier effectively to limit its liability, it must 1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; 2) obtain the shipper's agreement as to his choice of liability; 3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and 4) issue a receipt or bill of lading prior to moving the shipment. *Banos*, 997 F.Supp at 761 (citing *Rohner Gehrig Company v. Tri-State Motor Transit*, 923 F.2d 1118, 1121 (5th Cir. 1992) *accord Rohner Gehrig*, 950 F.2d 1079, 1083 (5th Cir. 1992)). The shipper can also prepare the bill of lading that the parties agree to and sign. *Sirren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1270 (11th Cir. 2001).

Following the Interstate Commerce Commission ("ICC") Termination Act in 1995 (49 U.S.C. 709), the first factor was slightly modified as carriers were no longer required to file their tariff with the ICC. Instead, it became the shipper's obligation to request a copy of the carrier's tariff. *Fireman's Fund McGee v. Landstar Ranger, Inc.*, 250 F.Supp.2d 684, 689 (S.D.Tex. 2003). The shipper is now deemed to have constructive knowledge of any terms contained in the

4

tariff. *Id.* at 688-690. AIM has presented no evidence suggesting that it or CT requested a copy of the tariff. Reddaway maintained a tariff; therefore, it satisfies the first factor of the test even if CT was not familiar with the terms of the tariff. *See Gulf Rice Arkansas*, 376 F.Supp.2d at 722.

The second factor is whether Reddaway obtained CT's consent to its choice of liability. CT used its own bill of lading, which did not specify a tariff. Instead, it signed the tariff after Reddaway affixed the sticker. Other circuits have held that, when a shipper uses its own bill of lading, it is bound by any terms it incorporates, even if it does not have actual knowledge of those terms. *See, e.g., Siren*, 249 F.3d at 1272 (limiting carrier's damages when shipper's bill of lading incorporated industry specific terminology which indisputably included limitation of liability); *Hughes Aircraft Company v. North American Van Lines, Inc.*, 970 F.2d 609 (9th Cir. 1992) (finding that shipper, who drafted bill of lading, was bound by limitation of liability contained in carrier's tariff); *Mechanical Technology Incorporated v. Ryder Truck Lines, Inc.*, 776 F.2d 1085 (3rd Cir. 1985) (holding that, when shipper's bill of lading stated that it would adopt the carrier's tariff "in effect on date of receipt," shipper was bound by carrier's inadvertence clause in carrier's tariff). As the Ninth Circuit explained in *Hughes*, when the shipper drafts the contract and negotiates its terms, they have "reasonable notice and opportunity to make a choice regarding the tariff." *Hughes*, 970 F.2d at 612. In this case, CT surely knew that its bill of lading did not contain a tariff, and that it would therefore negotiate that choice with Reddaway. If it disagreed with the tariff Reddaway selected, it could have refused to sign the bill of lading, requested Reddaway to use another tariff, or chosen another carrier. Instead, it signed the bill of lading. Reddaway therefore effectively obtained CT's agreement to its tariff, and to the inadvertence clause.

5

Reddaway satisfies the third factor because it allowed CT to choose between at least two levels of liability. The NMZ 100 tariff allows the shipper to specify a shipping rate with a correlating level of liability, from $5.00 to $25.00 per pound. Alternatively, the shipper can specify a release rate in the box provided on the bill of lading. CT did not complete this box and was assigned the rate of $5.00 per pound, as specified in the inadvertence clause.

Finally, the bill of lading used by the parties was prepared by CT, the shipper. Reddaway specified its tariff by placing the sticker on the bill of lading, which CT then signed. Since the parties used a bill of lading, Reddaway meets the fourth factor of the test.

### III. CONCLUSION

Defendant's Motion for Partial Summary Judgment is **GRANTED**. Plaintiff's damages are limited to $5 per pound.[2]

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the _____ of November, 2008.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.**

---

[2] Defendant requests damages to be limited to $6,255. The parties have not provided the Court with the weight of the shipment, however, to calculate the limitation provided by the inadvertence clause.

Reddaway satisfies the third factor because it allowed CT to choose between at least two levels of liability. The NMZ 100 tariff allows the shipper to specify a shipping rate with a correlating level of liability, from $5.00 to $25.00 per pound. Alternatively, the shipper can specify a release rate in the box provided on the bill of lading. CT did not complete this box and was assigned the rate of $5.00 per pound, as specified in the inadvertence clause.

Finally, the bill of lading used by the parties was prepared by CT, the shipper. Reddaway specified its tariff by placing the sticker on the bill of lading, which CT then signed. Since the parties used a bill of lading, Reddaway meets the fourth factor of the test.

### III. CONCLUSION

Defendant's Motion for Partial Summary Judgment is **GRANTED**. Plaintiff's damages are limited to $5 per pound.[2]

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 17th of November, 2008.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**

---

[2] Defendant requests damages to be limited to $6,255. The parties have not provided the Court with the weight of the shipment, however, to calculate the limitation provided by the inadvertence clause.